UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80738-CV-Hurley/Hopkins

COMMODITY FUTURES TRADING
COMMISSION,

     Plaintiff,

v.

PHILIP MILTON, et al.

     Defendants.
_____/

MEMORANDUM OPINION WITH FINDINGS OF FACT AND CONCLUSIONS OF
LAW REGARDING THE AMOUNT OF RESTITUTION, DISGORGEMENT,
AND CIVIL MONETARY PENALTIES AS TO DEFENDANTS
WILLIAM CENTER AND GREGORY CENTER

     **THIS CAUSE** is before the Court following a bench trial to determine the amount of

Restitution, Disgorgement and Civil Monetary Penalty Defendants William and Gregory Center

should be ordered to pay.  The Court previously entered consent orders of permanent injunction

against both Gregory Center [ECF No. 70] and William Center [ECF No. 54], the terms of which

are incorporated by reference into this Memorandum Opinion.  Each consent order stated that the

defendant "shall pay full restitution and disgorgement" and "shall pay a civil monetary penalty."

     Plaintiff then filed its Motion to Set Restitution, Disgorgement and Civil Monetary

Penalty Amounts as to Defendants William and Gregory Center [ECF No. 92].  The Court

denied the motion without prejudice because Plaintiff utilized an incorrect standard in

formulating its proposal and because the Court found that additional findings would be required

to determine the appropriate penalty amounts.  Order Denying Plaintiff's Motion to Set

Restitution and Setting Non-Jury Trial [ECF No. 112].  Accordingly, the Court held a bench trial

on April 24, 2013.  The Court has carefully considered the testimony of witnesses, evidence in the record, and the parties' arguments.  Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and reaches the following conclusions of law.

## I.    FINDINGS OF FACT

### A. Background

1.    On February 18, 2011, this Court entered a consent order of permanent injunction and ancillary relief against William Center.  Consent Order of Permanent Injunction, Civil Monetary Penalty and for Other Equitable Relief Against William Center [ECF No. 54] ("Consent Order Against William Center").  In that consent order, William Center stipulated to liability and agreed that he "shall pay" restitution, disgorgement, and civil monetary penalty ("CMP").  *Id.* at 12-13, 16.

2.    On July 29, 2011, this Court entered a consent order of permanent injunction and ancillary relief against Gregory Center. Consent Order of Permanent Injunction, Civil Monetary Penalty and for Other Equitable Relief Against Gregory Center [ECF No. 70] ("Consent Order Against Gregory Center").  In that consent order, Gregory Center stipulated to liability and agreed that he "shall pay" restitution, disgorgement, and a CMP.  *Id.* at 11, 14-15.

3.    William  and Gregory Center's respective consent orders each contain the following provision:

> To effect settlement of the matters alleged in the Complaint in this action prior to a trial on the merits or further judicial proceedings, [Defendant]:
>
> [. . .]
>
> Neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law contained in this Order, except as to jurisdiction and

venue, which he admits.  However, he agrees and intends that the allegations of the Complaint and all of the Findings of Fact and Conclusions of Law contained in this Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of any subsequent action to enforce the terms of this order and any bankruptcy proceeding filed by, on behalf of, or against him. No provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against [Defendant], or any other person in any other proceeding.

Consent Order Against William Center ¶ 11; Consent Order Against Gregory Center ¶ 11.[1]

4.      On May 2, 2007, Philip Milton and Gregory Center formed Trade, LLC in Florida.  Trade, LLC was organized to commercialize a futures and securities trading system designed by Milton.  Milton and Gregory Center were named Managing Members.  William Center was not named in the Articles of Incorporation but, by his own admission, acted as a Managing Member.  Complaint ¶ 27 [ECF No. 1].

5.      William Center exercised control over Trade, LLC's finances and had the power to control its operations.  *Id.* ¶ 60.

6.      From May 2, 2007 through July 9, 2009 ("relevant period"), Defendants Trade, LLC, William Center, Gregory Center, and others fraudulently solicited and accepted approximately $28 million from numerous individuals and entities to participate in a commodity pool to trade commodity futures contracts and securities.  *Id.* ¶ 1.

7.      Throughout the relevant period, in order to induce participation in the commodity pool, Trade, LLC, through its agents and employees, including William and Gregory Center, acted as an unregistered commodity pool operator, and omitted material facts, including that William Center, Gregory Center and Trade, LLC were misappropriating pool participant funds. Further, they made material misrepresentations, including misrepresenting that the commodity

---

[1] The allegations of the Complaint [ECF No. 1] are incorporated herein by reference.

pool was profitable when it was not; misrepresenting how funds loaned to Trade, LLC would be used, claiming they would be used for trading or operating expenses when they were actually used to pay pool participants as profit.  Gregory Center misrepresented Trade, LLC's compliance with applicable federal and state regulations.  *Id.* ¶ 2.  Consent Order Against Gregory Center ¶ 6 [ECF No. 70].

8.      At a minimum, William and Gregory Center made the following false or misleading representations in their solicitations:

   a.      they falsely claimed Trade, LLC was in compliance with CFTC registration requirements;

   b.      they falsely represented that the pool was profitable when it was not; and

   c.      Gregory Center helped William Center send pool participants fraudulent documents supporting Defendants' claim that the pool was profitable when it was not.

Complaint ¶ 42 [ECF No. 1].

9.      At a minimum, William and Gregory Center omitted the following material facts from their solicitations:

   a.      they failed to disclose the fact that they were using participants' funds for their personal use, including paying themselves a salary of up to $10,000 per month each and using pool funds to pay expenses;

   b.      they failed to disclose the fact that the pool was losing money; and

   c.      they failed to disclose the fact that the Defendants were using pool participants' funds to pay principal and purported profit returns to existing pool participants in a manner typical of a Ponzi scheme.

*Id.* ¶ 43.

10.     Trade, LLC, through its agents and employees, including William and Gregory Center, acted as a commodity pool operator.   As such, it owed a fiduciary duty to pool participants.   It was obligated to disclose all material information to participants.   Pool participants had a right to be informed that the pool was not profitable, that Trade, LLC was not in compliance with the rules of relevant federal regulatory agencies, that participant funds were being misappropriated in a manner typical of a Ponzi scheme, and that documents circulated by William Center were blatantly false on material issues, such as the pool's profitability.   The Centers' failure to disclose this information constituted material and fraudulent omissions.  *Id.* ¶ 44.

### B.  Misappropriation

11.     Trade, LLC, through William Center, Gregory Center and others, told prospective participants that Trade, LLC intended to earn commissions based on profits.   Trade, LLC was only profitable two months of the relevant period.   Nonetheless, William and Gregory Center took a commission in months other than the two profitable months. *Id.* ¶ 48.

12.     By awarding themselves commissions in unprofitable months, William and Gregory Center misappropriated participants' funds for their own personal gain.   Specifically, without regard to whether Trade, LLC was profitable, William and Gregory Center misappropriated up to $10,000 a month, each.   Additionally, they used Trade, LLC funds to pay expenses.   William Center and Gregory Center received approximately $1.3 million through Center Richmond, LLC.   William Center received another $50,000 directly.   Thus, instead of trading Trade, LLC's pool participants' funds as promised, Trade, LLC, William Center, and Gregory Center used participant funds for their own salary and expenses. *Id.* ¶¶ 49-50.

13.     William and Gregory Center used one or more of the Relief Defendants BD, LLC; CMJ Capital, LLC; Center Richmond, LLC; and TWTT, LLC as a means of misappropriating pool participants' funds.  A total of approximately $6 million was paid to the Relief Defendants in the form of salaries, business expenses, and other fraudulent expenses.  *Id.* ¶ 52.

### C.  Trial on Restitution, Disgorgement & Civil Monetary Penalty

14.     The court-appointed Receiver, Jeffrey C. Schneider, was called by the Commission to testify at the April 24, 2013 bench trial.  Schneider testified that during the relevant period, Defendants Trade, LLC, William Center, and Gregory Center fraudulently solicited and accepted approximately $28,400,000[2] from at least four investment clubs totaling at least 2,000 individuals to participate in a commodity pool to trade commodity futures contracts and securities.  The Court finds this testimony credible and worthy of belief.

15.     The Commission called Futures Trading Investigator George H. Malas to testify at the April 24, 2013 bench trial.  Malas testified that of the pool participant funds fraudulently solicited by William Center, Gregory Center, and Trade, LLC, $1,228,862.63 in pool participant funds were transferred to Relief Defendant Center Richmond, LLC.  The Court finds this testimony credible and worthy of belief.

16.     Malas testified that William Center personally received a total of $455,430 in unjust enrichment from pool participant funds, sent directly to him from bank accounts in the

---

[2] Although the Commission's Investigator George H. Malas testified that he calculated the amount solicited to the penny ($28,449,751.88), the Commission stated that it is more appropriate to use the Court appointed Receiver's conclusion regarding the amount solicited (approximately, $28,400,000).  Therefore, the Court will use $28,400,000 in its restitution and civil monetary penalty calculations.  This amounts to a difference of $49,751.88 and works to the Defendants' benefits because it reduces their restitution and civil monetary penalties.

name of Trade, LLC and Center Richmond, LLC, respectively.  The Court finds this testimony credible and worthy of belief.

17.    Malas further testified that Gregory Center personally received a total of $265,661.14 in unjust enrichment from pool participant funds, sent directly to him from bank accounts in the name of Center Richmond, LLC.  The Court finds this testimony credible and worthy of belief.

18.    Malas testified concerning his post-judgment interest calculations for the restitution awards against William and Gregory Center.  Malas testified that based on a restitution amount of $455,430 owed by William Center, during the period February 1, 2011 through March 31, 2012, a total of $32,885.80 in post-judgment interest would have accrued. Malas further testified that based on a restitution amount of $265,661.14 owed by Gregory Center, during the period July 1, 2011 through March 31, 2013, a total of $14,959.58 in post-judgment interest would have accrued[3].  The Court finds this testimony credible and worthy of belief.  His calculations were entered into evidence as Plaintiff's Exhibit 55 and Plaintiff's Exhibit 56, respectively.

19.    The court-appointed Receiver testified, which testimony was also uncontested, that the Defendants returned $10,304,712 to the Defendants' pool participants and that—after seeking and obtaining the Court's approval—he returned $7,283,000[4] to the Defendants' pool participants.  *Id*. at 3.  This testimony is credible and worthy of belief.

_____

[3] Post-judgment interest was determined by using the Treasury Bill rate prevailing on the date of the two consent orders, pursuant to 28 U.S.C. § 1961(a).

[4] The Receiver for Trade, LLC testified that he and the Receiver for Cash Flow Financial, LLC (one of the entities defrauded by Trade, LLC) recently determined that the Trade, LLC Receiver returned $123,880.07 more than Cash Flow Financial, LLC was entitled to.  The Receiver for Trade, LLC filed a motion with this Court seeking the return of those funds.  The Court granted

20.     Malas testified that Trade, LC received $28,449,751.88 in pool participant deposits during the relevant period and only placed $15,055,000 into its trading accounts, leaving a difference of $13,394,751.88.  He further testified that of the $15,055,000 traded, Trade, LLC lost $2,160,147.59 through its trading during the relevant period.  This testimony is credible and worthy of belief.

21.     William Center failed to file an answer to the complaint in this matter and failed to appear at trial in person or by counsel.  Therefore, he has failed to present any evidence contradicting the Plaintiff's allegations.

22.     Gregory Center appeared at trial but failed to present any witnesses or any other evidence refuting the Plaintiff's allegations.  Instead, he simply offered argument.

23.     The testimonies of Malas and Schneider were uncontroverted by Defendants.

## II.     CONCLUSIONS OF LAW

### A.  *Jurisdiction and Venue*

1.      This Court has jurisdiction over this action pursuant to Section 6c of the Commodity Exchange Act, 7 U.S.C.  § 13a-1 (2006) ("the Act"), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or

---

the motion (DE 118) and the Receiver for Trade, LLC is awaiting an order allowing the Receiver for Cash flow Financial, LLC to return the funds to him.  However, the Commission has calculated restitution without regard to this reduction in the amount of funds returned to Trade, LLC pool participants.  By proceeding in this manner, William Center benefits because it reduces the restitution award he will have to pay by $123,880.07.  Because Gregory Center is not liable for Trade, LLC's unjust enrichment, this has no impact on his restitution award.   The Court agrees with the Commission's approach and has adopted it for the purposes of this Memorandum Opinion.

practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

2.       Venue properly lies with this Court pursuant to Section 6c(e) of the Act in that Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### B.    Violations of the Act

3.       Because this proceeding is an action to enforce the provisions of the consent orders, specifically the provisions stating that the Centers will each pay restitution, disgorgement, and civil monetary penalties, the allegations of the Complaint and all of the Findings of Fact and Conclusions of Law in the consent orders are taken as true and given preclusive effect without the need for further proof.

4.       By the conduct described above, William Center knowingly, or with reckless disregard for the truth, violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008.

5.       During the relevant period, William Center knowingly, or with reckless disregard for the truth, violated Section 4b(a)(2)(ii) of the Act, 7 U.S.C. § 6b(a)(2)(ii), with respect to acts occurring before June 18, 2008, and Section 4b(a)(1)(B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(B), with respect to acts occurring on or after June 18, 2008, by issuing or causing to be issued false account statements and reports reflecting positive returns for the pool and increases in the value of pool participants' interests.

6.      William Center was a controlling person of Trade, LLC, and as such is liable for Trade, LLC's violations of the CEA as well as his own violations.

7.      By the conduct described above, Gregory Center knowingly, or with reckless disregard for the truth, violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), with respect to acts occurring before June 18, 2008, and Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), with respect to acts occurring on or after June 18, 2008.

### C.      Restitution

8.      The Court finds that Defendants' actions in this case comprised both misrepresentations and omissions of material facts.  On the whole, however, this case is most accurately described as an omissions case.  The heart of the fraud was the Defendants' failure to tell pool participants of the Defendants' scheme to misappropriate the pool participants' funds, that the Defendants were not trading all of the funds from pool participants, and that Defendants took commissions even when Trade LLC was not profitable, contrary to their earlier representations.  *See Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 485 (S.D. Fla. 1996) ("Based on Plaintiffs' theory that this case is based on Defendants' failure to disclose the 'Alleged Scheme,' this Court finds that this is an omissions case.").

9.      Because this is primarily an omissions case, this Court finds that it is not necessary that the Commission prove pool participants relied on William and Gregory Center's misrepresentations and omissions for purposes of calculating pool participant restitution because reliance is presumed.  *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972) ("Under . . . circumstances . . . involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recover.  All that is necessary is that the facts withheld be material in the sense

that a reasonable investor might have considered them important [in deciding whether to invest].”); *Waters*, 172 F.R.D. at 485(“[T]his is an omissions case.  Therefore, the *Affiliated Ute* presumption of reliance applies.”).

10.    Moreover, because the unlawful conduct in the instant case was pervasive, restitution to all defrauded customers is appropriate.  *Fed. Trade Comm’n v. Figgie Int’l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993) (“A presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant’s product.”).

11.    Defendants’ fraudulent activity was pervasive in the instant case because the material omissions were a part of Defendants standard promotional activities and materials.  *Id.* at 599-600.

12.    In the absence of any evidence submitted by Defendants to the contrary, the presumption of reliance arising from Defendants’ pervasive fraudulent activity is sufficient to warrant relief.  *Id.  See also CFTC v. Wilshire Mgmt. Corp.*, 531 F.3d 1339, 1345 n.3 (11th Cir. 2008) (“Appellants also argue that restitution was improper because there was insufficient evidence that the customers relied on Appellants’ misrepresentations. We express no opinion as to whether a finding of reliance is required to award restitution in CFTC enforcement proceedings under 7 U.S.C. § 13a-1.  However, even if such a finding was required, there is ample evidence in the record showing that the customers here relied on Appellants’ misrepresentations.”).

13.    Finally, “proof of non-reliance is an affirmative defense….[and] Defendants have the burden of proving non-reliance by a preponderance of the evidence on an individual basis.”

*Waters,* 172 F.R.D. at 486 (citations omitted).  William Center failed to file an answer to the complaint.  Gregory Center failed to plead non-reliance in his answer.  Both William and Gregory Center failed to present a single witness or evidence of any kind at trial to refute the presumption of reliance.  They cannot now argue that the Commission has failed to prove reliance.

14.     The Court has previously held that restitution is determined by calculating each Defendants' unjust enrichment.  Order Denying Plaintiff's Motion to Set Restitution and Setting Non-Jury Trial, at 2 [ECF No. 112] ("The Court therefore finds that restitution in this case shall be measured by Defendants' unjust enrichment."); *see also Wilshire*, 531 F.3d at 1345.  Pool participants' funds used to pay operating expenses and salary to defendants are included as part of the unjust enrichment*.  See CFTC v. Capital Blu Mgmt., LLC*, No. 6:09-cv-508-ORL-28DAB, 2011 WL 2357629, *6 (M.D. Fla. June 9, 2011) ("It was improper for Defendants to use [pool participant] monies to pay legal fees or any other Capital Blu operating expense, and Defendants are responsible for such monies—whether they went toward legitimate Capital Blu expenses or not.").

15.     The Court finds that William Center was personally, unjustly enriched in the amount of $455,430.

16.     A "controlling person" of an entity is liable for that entity's violations of the Act if the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.  *E.g.,* Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006); *CFTC v. Gutterman,* No. 12-21047-CIV, 2012 WL 2413082, *6-7 (S.D. Fla. June 26, 2012) (holding individual defendant liable for corporate defendant's violation); *CFTC v. Machado*, No.

11-22275-Civ, 2012 WL 2994396, *7  (S.D. Fla. April 20, 2012) (holding individual liable for corporate entity's violation).

17.     William Center was a controlling person of Trade, LLC, failed to act in good faith, and knowingly induced, directly or indirectly, the acts constituting Trade's violations. Consent Order Against William Center [ECF No. 54].

18.     Trade, LLC's unjust enrichment is determined as follows:  the amount Trade, LLC received from pool participants ($28,400,000), less the amount returned to pool participants by Trade, LLC ($10,304,712), less the amount returned to Trade, LLC pool participants by the Receiver ($7,283,000), less the amount lost trading ($2,160,147.59), equals unjust enrichment of $8,652,140.41.

19.     The Court finds that Trade, LLC was unjustly enriched in the amount of $8,652,140.41, and that William Center, as a controlling person of Trade, LLC, is liable for Trade, LLC's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

20.     The Court finds that Gregory Center was unjustly enriched in the amount of **$265,661.14**.

21.     The Court finds that post-judgment interest for William and Gregory Center was correctly calculated by the Commission's Investigator, George H. Malas at the April 24, 2013 bench trial.   His uncontested calculations are contained in Plaintiff's Exhibits 55 and 56. Plaintiff's Exhibits 55 and 56 are incorporated by reference herein.

### D.     Disgorgement

22.     Disgorgement is an equitable remedy designed to prevent unjust enrichment. *CFTC v Sidoti*, 178 F.3d 1132, 1138 (11th Cir. 1999).   Because Defendants' restitution

obligations provide for the full repayment of the Centers' unjust enrichment, neither William nor Gregory Center will be required to pay their unjust enrichment as disgorgement.

### E.     Civil Monetary Penalties ("CMPs")

23.     CMPs are imposed under Section 6c(d)(1) of the Act, 7 U.S.C. §13a-1(d)(1) and serve the purposes of furthering the Act's remedial policies and detering others from committing similar violations.

24.     Section 6c(d)(1) of the Act, 7 U.S.C. §13a-1(d)(1) and Regulation 143.8 provide for a CMP assessment for violations committed prior to October 23, 2008 of not more than the greater of $130,000 or triple the monetary gain to such person for each such violation of the Act and Regulations, and for violations committed on or after October 23, 2008, not more than the greater of $140,000 or triple the monetary gain to such person for each such violation.

25.     When calculating CMP, courts take into account the seriousness of the violation at issue as well as mitigating or aggravating circumstances. *JCC, Inc. v. CFTC*, 63.F.3d 1557, 1571 (11th Cir. 1995).  Factors used by courts to calculate an appropriate CMP include "the relationship of the violation at issue to the regulatory purposes of the Act and whether or not the violations involved core provisions of the Act; whether or not scienter was involved; the consequences flowing from the violative conduct; financial benefits to a defendant; and harm to pool participant or the market." *Machado*, 2012 WL 2994396, at *10.

26.     The Court finds that the Centers knowingly engaged in fraud, which is a core violation of the Act and is very serious. *JCC, Inc.*, 63 at 1571 ("Conduct that violates core provisions of the Act's regulatory system such as manipulating prices or defrauding pool participants should be considered very serious even if there are mitigating facts and circumstances") (citation omitted).

27.     In addition, during the fraud, the Centers continued to deceive participants after the pool participants invested in order to defraud them of additional funds, and neither Defendant has personally made an effort to make the victims whole or shown appropriate contrition.

28.     Gregory Center testified on direct examination that he and his wife are both lawyers, and that both make over $100,000 a year.  Furthermore, he testified that he lives in a house owned by his wife and that he has no financial obligation for the house.  His was unable to identify how his paycheck was spent and simply stated that it is deposited into a savings account, and is then spent by his wife however she sees fit.  He acknowledged that he has a college savings account for his son and a retirement account for himself.  Accordingly, the Court finds he has the ability to pay a significant CMP.

29.     Although one statutory calculation produces a maximum CMP of $260,000,000 to $280,000,000, depending on how many of the pool participants were solicited before and after October 23, 2008, an award of this size would be excessive in this case.

30.     However, a large CMP is necessary to penalize the Defendants for their conduct and to act as a deterrent to others who may be tempted to engage in similar conduct.  Therefore, the Court will order William Center to pay a CMP of $4,000,000 and Gregory Center to pay a CMP of $2,000,000.  These numbers are warranted by the aggravating factors in this case and are within the statutory penalty limits set forth in Section 6c(d)(1) of the Act, 7 U.S.C. §13a-1(d)(1) and Regulation 143.8.

### III.     CONCLUSION

In light of the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1.     The Court will enter a separate final judgment consistent with the findings of fact and conclusions of law in this Memorandum Opinion.

Memorandum Opinion with Findings of Fact and Conclusions of Law Regarding the Amount of Restitution,
      Disgorgement, and Civil Monetary Penalties Amounts as to Defendants William Center and Gregory
      Center
Commodity Futures Trading Commission v. Milton
Case No. 10-cv-80738-DTKH

2.     The terms of the consent orders previously entered against William and Gregory

Center remain in force and are unaffected by this Order.

3.     The Court retains jurisdiction over the parties and this cause to enforce all

provisions of this memorandum opinion and provide additional relief as justified.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 17th day of May,

2013.

Daniel T. K. Hurley
United States District Judge